IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KONNIE SCOGGINS, | ) Civil No.: 3:13-cv-02118-JE |
| | ) |
|       Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |
| _____ | ) |

      Merrill Schneider
      Schneider Kerr Law Offices
      P.O. Box 14490
      Portland, OR 97293

            Attorney for Plaintiff

      Billy J. Williams, Acting U.S. Attorney
      Adrian L. Brown, Asst. U.S. Attorney
      Janice Hebert, Asst. U.S. Attorney
      1000 S.W. 3rd Avenue, Suite 600
      Portland, OR 97204

      Courtney Garcia
      Office of the General Counsel
      Social Security Administration
      701 5th Avenue, Suite 2900 M/S 221 A
      Seattle, WA 98104-7075

            Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, she seeks an Order remanding the action for further proceedings.

For the reasons set out below, this action should be remanded for further proceedings.

## Procedural Background

Plaintiff filed an application for benefits on September 24, 2010, alleging that she had been disabled since her birth in 1990. After her application was denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

On May 22, 2012, a hearing was held before ALJ Dan Hyatt. On July 19, 2012, ALJ Hyatt issued a decision finding that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on September 24, 2013, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff is seeking review of that decision.

## Factual Background

Plaintiff was born in 1990 and was 21 years old at the time of the hearing before the ALJ. Plaintiff did not graduate from high school. She was working on completing her GED at the time of the hearing.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled

within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

  Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

  Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

  Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

  Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

FINDINGS AND RECOMMENDATION – 3

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

## Medical Record and Hearing Testimony

Like the parties, I will not separately summarize the medical record and testimony, but will instead address relevant portions of the record in the discussion below.

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of September 24, 2010.

At the second step, he found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder (ADHD), and a depressive disorder.

At the third step, the ALJ next found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the presumptively disabling

impairments in the "listings," 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1525; 404.1526).

The ALJ next evaluated Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform a full range of work at all exertional levels except that she is limited to simple, repetitive tasks, should have no contact with the public and "should not be required to perform mathematical tasks such as making change." In determining her RFC, the ALJ found that Plaintiff's statements concerning the severity of her impairments and limitations were only "partially credible."

At the fourth step of his disability analysis, the ALJ found that Plaintiff had no past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform jobs that existed in substantial numbers in the national economy. Based upon testimony from the VE, the ALJ cited hand packager and assembler as examples of those jobs. Accordingly, he found that Plaintiff was not disabled within the meaning of the Act.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

FINDINGS AND RECOMMENDATION – 5

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in evaluating the opinions of examining psychologists, Jamie Carter, Ph.D. and David Morgan, Ph.D.

### I. Evaluating Medical Opinion

The opinion of an examining physician[1] is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must support the rejection of an examining physician's opinion that is contradicted by another physician with specific and legitimate reasons that are supported by substantial evidence in the record. Andrews, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of

---

[1] Psychologists, as well as licensed physicians, are considered "acceptable medical sources" and, for the purposes of social security determinations, their opinions are evaluated under the same standards. 20 C.F.R. §§ 404.1513(a), 416.913(a). See, also, Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).

either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir.1995).

**Dr. Carter**

State psychologist Dr. Jamie Carter evaluated Plaintiff in August 2010. He noted that Plaintiff reported she was not currently receiving any mental health treatment. Dr. Carter assessed Plaintiff with mood disorder, NOS; ADHD combined type (provisional); borderline personality traits and rule-out borderline personality disorder. He assigned Plaintiff a Global Assessment of Functioning ("GAF") Score of 50, explaining that she performed some activities of daily living, had social contacts and reported "significant Axis I and II symptoms." Dr. Carter assessed Plaintiff with "moderate" limitations in her ability to learn new tasks; exercise judgment and make decisions; relate appropriately to co-workers, supervisors and the public; and maintain appropriate behavior in the work setting. He assessed "moderate" attention problems, hyperactivity, mood changes and depression. Dr. Carter also assessed "marked" limitations in Plaintiff's ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 313-315. Dr. Carter stated that Plaintiff was able "to reason and to understand. Some impairment in memory and concentration on mental status tasks. Has limited social network but does go to church and interact with fiancé and roommate." Id. He opined that Plaintiff's mental health would benefit from treatment and estimated that her functional limitations would impair Plaintiff to the degree he indicated in terms of the next three to six months. Tr. 316.

The ALJ gave Dr. Carter's opinion only "some weight" because it was "inconsistent with the record that shows that claimant has not sought regular mental health treatment and has not taken antidepressant medications on a regular basis during the relevant period."

FINDINGS AND RECOMMENDATION – 7

Plaintiff contends that the ALJ failed to explain what material evidence in Dr. Carter's opinion he rejected or accepted. In the alternative, Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting Dr. Carter's opinion.

In the Ninth Circuit, the standards that must be met by an ALJ who discounts the opinion of a treating or examining physician are well established and are noted above. Here, Dr. Carter's opinion was contradicted by the opinions of State agency psychologists, thus the "specific and legitimate" standard applies. Under Ninth Circuit case law, an ALJ can satisfy this standard by properly "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir.1986) (per curiam), superseded by statute on other grounds as recognized in Bunnell v. Sullivan, 912 F.2d 1149, 1154 (9th Cir.1990); see also, Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir.1989)(concluding that substantial evidence supported rejection of physician's opinion where ALJ "summarized the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings."). Relying on Magallanes, the Commissioner argues that the ALJ satisfied the applicable standard.

Plaintiff argues that "the ALJ failed to give weight or explain the disposition of material limitations assessed by Dr. Carter" and that Magallanes is inapposite because it concerned the "sufficiency of the reasons that the ALJ gave to reject a medical opinion under the specific and legitimate standard." Pl.'s Reply at 2. I disagree.

The Ninth Circuit has explained that while an ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," he "need not discuss all evidence presented" but must only "explain *why* 'significant, probative evidence has been rejected'" Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394–95

FINDINGS AND RECOMMENDATION – 8

(9th Cir.1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir.1981)) (emphasis added). In this case, the ALJ's decision explicitly referred to the physician by name, and noted, discussed, and evaluated his report. Magallanes, 881 F.2d at 754. The ALJ noted specific portions of Dr. Carter's opinion regarding Plaintiff's conditions and the effects those conditions would likely have on her ability to perform work related tasks. The ALJ also noted that Dr. Carter's opinion as to Plaintiff's limitations was only in terms of the three to six months following his August, 2010 evaluation. Furthermore, the ALJ's RFC determination, by including limitations consistent with some but not all of those assessed by Dr. Carter, unambiguously indicated the portions of Dr. Carter's opinion with which the ALJ disagreed.

Second, the ALJ also explained *why* he rejected those portions of Dr. Carter's opinion. Vincent, 739 F.2d at 1394-95. The ALJ certainly could have produced a fuller explanation of the weight he accorded Dr. Carter's opinion, and a more detailed explanation would have been useful in reviewing his decision. However, although the specific portion of his decision concerning Dr. Carter's opinion was brief, elsewhere in his decision the ALJ cited substantial evidence supporting the conclusion that Plaintiff was significantly less impaired than Dr. Carter opined. The ALJ noted that Plaintiff had not been prescribed medication for ADHD since kindergarten and that she had not sought or received regular mental health treatment, having initiated, but not followed through with, care at the Sea Mar Vancouver Medical Clinic. The ALJ also noted that Plaintiff reported that she exercised daily, slept eight hours a night, was "good with computers," and performed activities of daily living that included caring for an elderly gentleman with whom she lived, household chores, various hobbies, spending time with her significant other and attending church and bible study classes. Plaintiff also testified that she had looked for work, including at fast food restaurants, a gas station and in retail. Though it

FINDINGS AND RECOMMENDATION – 9

would have been preferable if the ALJ had specifically addressed that evidence in his discussion of Dr. Carter's evaluation, this evidence is not negated by his failure to do so, and ignoring it simply because the ALJ failed to explicitly link it to his brief discussion of Dr. Carter's opinion would elevate form over substance.

**Dr. Morgan**

In February, 2011, David Morgan, Ph.D. saw Plaintiff for a second psychological consultative examination. Plaintiff reported that she had a history of suicide attempts and had "made a recent suicidal gesture (cutting herself with a knife) about two months ago." Dr. Morgan assessed Plaintiff with major depressive disorder, recurrent, severe without psychotic features; borderline personality disorder traits; and a long history of psychiatric instability and poor coping skills. He opined that Plaintiff would have "moderate" limitations in understanding, remembering and persisting in tasks; following complex instructions; learning new tasks; performing routine tasks without undue supervision; and communicating and performing in a work setting with limited public contact. He opined that she would have "marked" limitations in her ability to be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting with public contact; and maintain appropriate behavior in a work setting. Tr. 325. Dr. Morgan noted that Plaintiff had not been taking medication for several years but that she reported that antidepressants had been helpful in the past. He remarked that Plaintiff was oriented to person, place and time, displayed normal speech and there was no evidence of significant memory impairment. He opined that she "appears to have limited abilities and no real access to help. She would benefit from counseling and medication management to help her reach her full potential." Id. In a check box response, Dr. Morgan noted his agreement that mental health intervention would likely restore or substantially improve Plaintiff's ability to

work for pay in a regular and predictable manner.  He estimated that Plaintiff's functional limitations would impair her to the degree he indicated in terms of the next ten to fifteen months. Tr. 326.

The ALJ noted Dr. Morgan's opinion that Plaintiff would have severe impairment in her ability to maintain appropriate behavior in a work setting, had limited abilities and "no real access" to help.  He gave "little weight" to his opinion because it was "inconsistent with the record that shows the claimant's behavior has been appropriate when dealing with her medical providers, and the record does not show she has had any difficulty interacting with medical support staff" and because it was inconsistent "with the record that shows the claimant has access to treatment at the Sea Mar clinic in Vancouver."

Plaintiff first contends that evidence that Plaintiff was able to behave appropriately in a medical office does not bear on the question of whether Plaintiff can behave appropriately in a work setting. Plaintiff also argues that the ALJ failed to explain why evidence that she had some access to medical care was inconsistent with Dr. Morgan's opinion that she had "no real access." Finally, Plaintiff asserts that the ALJ failed to offer any reasons for rejecting Dr. Morgan's opinion that she had "marked" limitations in her ability to "be aware of normal hazards and take appropriate precautions," or "moderate" difficulties performing "routine tasks without undue supervision."

The Commissioner responds that the ALJ discounted Dr. Morgan's opinions regarding Plaintiff's social limitations because they were inconsistent with the record.  The Commissioner asserts that the ALJ "described that Plaintiff had acted appropriately when dealing with her medical providers and support staff . . .which was inconsistent with Dr. Morgan's opinion that Plaintiff had marked limitations in her ability to 'communicate and perform effectively in a work

FINDINGS AND RECOMMENDATION – 11

setting with public contact.'" Def. Br. at 8 (quoting Tr. 25).  The Commissioner contends that the ALJ properly concluded that Dr. Morgan's opinion that Plaintiff had "limited abilities and no real access to help" was inconsistent with the record that showed Plaintiff had access to treatment at the Sea Mar Clinic. The Commissioner also cites to additional evidence in the record that she argues supports the conclusion that Plaintiff's social interactions were inconsistent with the "extreme" limitations assessed by Dr. Morgan.

The Commissioner's argument is unavailing.  First, it is based on connections between Dr. Morgan's opinion and the ALJ's stated rationale that simply are not in his decision.  Despite the Commissioner's argument, the ALJ did not find Dr. Morgan's opinion inconsistent with *the record* (i.e. the record as a whole), but with "the record that shows the claimant's behavior has been appropriate when dealing with her medical providers, and the record does not show she has had any difficulty interacting with medical support staff." Tr. 25. Furthermore, nowhere in the ALJ's decision does he state, as the Commissioner asserts, that this ability to behave appropriately was "inconsistent with Dr. Morgan's opinion that Plaintiff had marked limitations in her ability to 'communicate and perform effectively in a work setting with public contact.'" Def. Br. at 8 (quoting Tr. 25).

It is unclear to this court what aspects of Dr. Morgan's opinion the ALJ found inconsistent with Plaintiff's ability to behave appropriately in a medical office setting since neither Dr. Morgan, nor any other medical provider in the record, addressed this issue. Furthermore, even if the ALJ had proffered the rationale that Plaintiff's ability to behave appropriately in a medical setting was inconsistent with Dr. Morgan's opinion that Plaintiff had marked limitations in her ability to communicate and perform effectively in a work setting with public contact, such reasoning is unpersuasive.  As Plaintiff notes, an ability to behave

appropriately in a medical setting bears little, if any, significant relationship to activities in the workplace. Pl.'s Br. at 10 (citing Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Finally, Dr. Morgan's opinion that Plaintiff had "no real access" to help was written two months before Plaintiff initiated care at Sea Mar clinic and it is unclear how this comment undermines his opinion with regard to Plaintiff's conditions and limitations.

Unlike the evaluation of Dr. Carter's opinion that, while brief, allowed the court to draw specific and legitimate inferences concerning his conclusions, the ALJ's treatment of Dr. Morgan's opinion is ambiguous, at best. Although it may be appropriate for the court to draw inferences from the ALJ's opinion, those inferences must be there to be drawn. Magallanes, 881 F.2d at 755. Here, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Morgan's opinion. The Commissioner's attempt to now interpret and supplement the ALJ's rationale is neither appropriate nor persuasive. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009)(court must review ALJ's decision "based on the reasoning and factual findings offered by the ALJ— not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking")(citations omitted).

When an ALJ provides inadequate reasons for rejecting the opinion of a treating or examining physician, that opinion is credited as a matter of law. Lester v. Chater, 81 F.3d 821, 834 (9th Cir.1995). A reviewing court then has discretion to remand the action for further proceedings or for a finding of disability and an award of benefits. See, e.g, Stone v. Heckler, 761 F.2d 530, 533 (9th Cir.1985). Whether the action should be remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.2000). Remand for an award of benefits is

FINDINGS AND RECOMMENDATION – 13

appropriate only if the ALJ failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996). Even if those requirements are met, however, remand for further proceedings is the appropriate remedy "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014)

Here, given the considerable evidence in the record that could support the conclusion that Plaintiff was not as impaired as she alleged and the ambiguity in the ALJ's treatment of Dr. Morgan's opinion, it is not clear that a finding of disability would be required if Dr. Morgan's opinion was credited. In addition, a thorough review of the record leads me to conclude that there is cause for "serious doubt" as to whether Plaintiff is, in fact, disabled. Id. Accordingly, this action should be remanded for further proceedings.

## II. Plaintiff's GAF Scores

Plaintiff contends that the ALJ erroneously rejected Dr. Carter's and Dr. Morgan's GAF score findings. Dr. Carter assigned Plaintiff a GAF score of 50 and Dr. Morgan assigned her a GAF score of 45. The ALJ gave "little weight" to the low GAF scores in the record. He explained that

> [t]he Commissioner noted, in discussing comments to the current mental disorder evaluation regulations, that the GAF scale "does not have a direct correlations to the severity requirements in our mental disorder Listings" . . . . A low GAF might reflect difficulties in a wide range of functional areas. In contrast, the regulatory definition of disability focuses on occupational functioning. For example, marital stressors may result in a low GAF score, but these stressors have no direct correlation to a claimant's occupational functioning.

Tr. 25-26(citations omitted).

Plaintiff argues that because an RFC determination is broader than a determination under the "Listings," any limit to the relevance a GAF score has to Step Three of the evaluation process does not equate to limited relevance in the RFC assessment.

GAF scores range from 1–100. See Diagnostic and Statistical Manual of Mental Disorders, ("DSM–IV") p. 32 (4th ed.1994).  In arriving at a GAF score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. Id.  A GAF score represents a snapshot in time. Garner v. Colvin, 2015 WL 5603975, at *2 (9th Cir. Sept. 24, 2015).  While GAF scores are not necessarily irrelevant to a disability determination and must be considered along with all relevant evidence in the record, SSR 96-8p; they do not translate into concrete functional limitations, Phongsuwan v. Astrue, 2010 WL 796969, at *5 (E.D. Cal. Mar. 5, 2010); and they "[do] not determine disability." Gardner v. Astrue, 2009 WL 1505303 *10 (D. Or. May 29, 2009)(Marsh, J.).

Plaintiff does not and cannot make the argument that the GAF scores assigned by Dr. Carter or Dr. Morgan automatically result in a disability determination. The ALJ's failure to incorporate the GAF scores in the RFC assessment does not, in itself, make the assessment inaccurate.  See Vance v. Astrue, 2008 WL 2955140, at *5 (C.D. Cal. July 30, 2008); see also, Howard v. Commissioner of Social Sec., 276 F.3d 235, 241 (6th Cir.2002). A GAF assessment reflects a clinician's subjective judgment concerning the severity of an individual's functional impairments *or* symptoms. DSM–IV–TR at 32–33. As such, it represents a facet of that medical provider's opinion.  As noted above, the ALJ's evaluation of Dr. Carter's opinion was without harmful error, this includes his consideration of the GAF score contained in that opinion.  The ALJ's evaluation of Dr. Morgan's opinion, however, was not without error.  On remand, the ALJ

FINDINGS AND RECOMMENDATION – 15

will have an opportunity to evaluate the significance of the GAF score assigned by Dr. Morgan within the context of addressing his overall opinion.

## Conclusion

For the reasons set out above, the decision of the Commissioner should be REVERSED and this action should be REMANDED to the Agency pursuant to sentence four of 42 U.S.C. §405(g), for further proceedings to address the issues discussed above. The judgment should require that, on remand, the ALJ thoroughly and unambiguously address Dr. Morgan's opinion and either provide specific and legitimate reasons supported by substantial evidence in the record for discounting the opinion or give it full credit and include in Plaintiff's RFC all limitations that are consistent with his report. The ALJ shall reassess Plaintiff's credibility and RFC if that is required by conclusions drawn based upon the above instructions, and shall conduct any additional proceedings required by any alteration in Plaintiff's RFC.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due October 19, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 30th day of September, 2015.

    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION – 16